**FINERTY INVESTMENT CO. et al. v. ATHEY et al.**

No. 11163—Opinion Filed May 22, 1923.

(Syllabus.)

**1. Contracts — Duty of Court to Enforce Valid Contracts.**

It is the duty of the court to enforce valid contracts voluntarily entered into in the absence of fraud or mistake, and the courts have no authority to relieve parties of their solemn obligations assumed under such contracts.

**2. Same—Usury — Real Estate Loan—Exercise of Option to Pay Principal Before Maturity—Part of Interest Charged as Commission Collectible.**

Where A. loaned to B. $12,500, due 10 years from November 1, 1911, and the loan was consummated by B. executing to A. his note for $12,500, due November 1, 1921, bearing interest at seven per cent. per annum, secured by a first mortgage on real estate, such note and mortgage providing that B. had the option of paying $100, or any even multiple thereof, at any interest-paying date, and a note of $3,865, payable in annual installments of $375, representing three per cent. interest on the amount loaned, said note being designated by the parties in the application for the loan as a commission and secured by a second mortgage upon the real estate, providing that the exercise by B. of any privilege or option provided for in the prior bond and mortgage shall in no way affect the liability of B. provided for in the second note and mortgage, held, the seven per cent. provided for in the first note and the three per cent. provided for in the second note, aggregating 10 per cent. interest, the maximum amount allowed by law for the entire time the loan was to run, the notes and mortgages were valid contracts, and that B., or those in privity with him, by paying on November 1, 1915, the principal of $12,500, with seven per cent. interest, and the annual installment of $375, due on the note of $3,865, did not discharge the unpaid balance of the note of $3,865.

Record examined, and held, that the judgment of the trial court canceling the second mortgage was misapplication of the law to the established facts, and must be reversed.

Error from District Court, Grady County; Will Linn, Judge.

Action by B. M. Athey et al. against Finerty Investment Company et al., for cancellation of real estate mortgage. Judgment for plaintiffs, and defendants bring error. Reversed, and remanded, with directions.

Embry, Johnson & Tolbert, for plaintiffs in error.

Simons, McKnight & Simons and Bond, Melton & Melton, for defendants in error.

KENNAMER, J. On July 7, 1911, Hiram Young McBride and his wife, Lovicia Colbert McBride, applied to F. C. Finerty & Company of Oklhaoma City to secure a farm loan of $12,500, or such sum as might be approved for 10 years from November 1, 1911, drawing interest at seven per cent. per annum payable semi-annually on the first day of November each year, to be secured by real estate mortgage on 420 acres of land located in Grady county, Okla,

The parties on said date signed and executed a loan contract. The contract, among others, contained the following provisions:

"As commission and compensation for services in procuring and negotiating this loan, I hereby agree to pay said F. C. Finerty & Co. (my said agent) or their assigns, the sum of $3,865, or if said loan shall only be approved by my said agent for a less sum than the amount herein contracted for, then, and in that event, I agree to pay said F. C. Finerty & Company, a commission, which commission shall be in amount in the same proportion to the commission hereinabove agreed to be paid, as said loan, as approved, bears to the amount of the loan herein contracted for, said commission to be payable according to the terms of one certain installment promissory note, for $3,865, each installment of which note shall draw interest from maturity thereof at ten per cent. per annum, payable on November 1st, annually, and shall be secured by me by a duly executed second mortgage on the above described land, subject only to the principal loan of $12,500, herein contracted for."

F. C. Finerty, who was doing business as the F. C. Finerty Company, consummated the loan by having the McBrides execute to F. C. Finerty a note for $12,500, bearing interest at the rate of seven per cent. per annum from its date, due November 1, 1921, and secured by a first mortgage on the land covered by the application, and a note for $3,865, payable in annual installments of $375, with the exception of the first installment, which was for $490 on account of the extra period of time intervening between July 7, 1911, to November 1, 1911, said installments to bear interest at the rate of 10 per cent. after maturity.

The note for $3,865 was secured by a second mortgage upon the land and contained the following provision:

"It is hereby understood and agreed that in consideration of the covenants, agreements and privileges contained in the prior bond and mortgage, referred to above, and the rate of interest provided for therein, and the time and money expended in making the loan evidenced by said prior bond and mortgage, that neither the payment of said prior bond or any part thereof before maturity, nor the exercising of any privilege or option written in said prior bond or mortgage, shall in any way lessen or affect the liability of the party of the first part on the note, or indebtedness, secured by this mortgage."

The principal note for $12,500 provided that the makers thereof had the option of paying $100, or any even multiple thereof, at any interest-paying date.

F. C. Finerty sold the principal note of $12,500 to the Central Life Assurance Society of Des Moines, Iowa, on the 24th day of May, 1912.

On the 7th day of January, 1914, the McBrides sold the lands covered by the mortgages to Emery F. Freeman warranting the titles to the lands, except as to the mortgages herein set out, to F. C. Finerty.

On the 20th day of January, 1914, Emery Freeman and his wife, Effie M. Freeman, by warranty deed, conveyed the lands to Rosa Belle Athey for the consideration of $38,350, and warranted the title to the lands, except as to the mortgages securing the loan made by F. C. Finerty to the McBrides.

It appears that by mesne conveyances B. M. Athey, Roy G. Athey, and Rosa Belle Athey were the owners of the land on the date of the institution of this action. That on or about the 25th day of October, 1915, B. M. Athey, Roy G. Athey, and Rosa Belle Athey paid to the Central Life Assurance Society the principal note, and all accrued interest at seven per cent. thereon, or $12,-500.due on the date of November 1, 1915, and paid to the Finerty Investment Company, of Oklahoma City, the holder and owner of the note of $3,865, $375, which amounts represented the full amount of the principal note of $12,500 and accrued interest at the rate of 10 per cent. per annum to the date of November 1, 1915.

Prior to these payments F. C. Finerty died and the Finerty Investment Company, a corporation, was organized, which corporation had become the owner of the note of $3,865.

On the payment of the principal note of $12,500 and accrued interest, and the installment note of $375, the Atheys demanded a release and satisfaction of the second mortgage as a lien upon the land, which was refused by the Finerty Investment Company. The Atheys, as plaintiffs, instituted this action in the district court of Grady county against the Finerty Investment Company to cancel and remove the second mortgage as a cloud upon their title to said land.

The Finerty Investment Company filed an answer and cross-petition to the petition of the plaintiffs, and, after denying the material allegations of the plaintiffs' petition alleged that the defendant investment company was entitled to judgment against plaintiffs establishing its unpaid balance of $2,-250 on the note of $3,865; for attorneys fee; for foreclosure of mortgage lien upon

the land in controversy, and all proper equitable relief.

The cause was tried on the 28th day of July, 1919. On the 30th day of August, 1919, the court entered judgment in favor of the plaintiffs. The court made a general finding in favor of the plaintiffs, and by its judgment canceled the second mortgage held by the defendants securing the payment of the note of $3,865.

The defendants have prosecuted this appeal to reverse the judgment of the trial court. The parties will be referred to as they appeared in the trial of the cause.

It appears from the pleadings and the evidence that the plaintiffs recovered the judgment canceling the mortgage held by the defendants on the loan made to F. C. Finerty by the McBrides, as evidenced by the principal note of $12,500, bearing seven per cent. interest, secured by the first mortgage on the land, and the note for $3,-865, secured by the second mortgage, should be construed together as one contract under which the borrowers received a loan of $12,500, with interest at the rate of 10 per cent. per annum from date until paid, and that the payment of $12,500 and accrued interest discharged the entire loan; including the principal note and the second note representing three per cent. interest on the loan for the time the loan was to run.

Counsel for the plaintiffs state that the defendants are not entitled to enforce payment of the balance due on the second mortgage note of $3,865, for the reason that F. C. Finerty could not collect a commission, as he loaned to the borrowers, McBrides, his own money, and that on the payment of the principal note and accrued interest at 10 per cent., that effected a discharge of the balance due on the unmatured note of $3,-865, which represented unearned interest.

Counsel for the plaintiffs insist that any other construction of the transaction would render the contract unconscionable and thereby legalize that which was illegal. We cannot agree with this contention of counsel for the plaintiffs. In our view of the case it is immaterial whether the three per cent. charged the McBrides in the transaction be considered a commission or interest. At most, whether the three per cent. was exacted as compensation in procuring the loan or as additional interest to the seven per cent., the contract in no way was unlawful or in contravention of any statute in this state. The seven per cent. interest provided for in the principal note of $12,500 and the three per cent. represented by the note of

$3,865 together only represented a charge of 10 per cent. for the use or loan of the money during the period under the contract for which the borrowers had a right to retain the money loaned to them. The parties had a legal right to make this kind of contract. If such a contract is to be made illegal, that duty rests with the Legislature and not with the court.

Section 5097, Comp. Stats. 1921, specifically authorizes parties to a contract to pay 10 per cent. interest.

Section 5095, Comp. Stats. 1921, defines interest to be:

"Interest is the compensation allowed for the use or forebearance, or detention of money, or its equivalent."

The mortgage canceled by the trial court, in plain language, provided that the exercise of any of the privileges granted under the first mortgage or the exercising of any option thereunder should not "in any way lessen or affect the liability of the party of the first part on the note or indebtedness secured by this mortgage."

Counsel for the plaintiffs have cited no authority or statute rendering this provision of the second mortgage illegal or unenforceable. It is clear that the borrowers, McBrides, received. in consideration of this provision and the other provisions in the mortgages, the loan and use of $12,500 for a period of 10 years. They had the right to the use of the money for the period of 10 years. The right to the use of the money was binding upon the lender. The amount charged as compensation for the loan, and the contract to pay ten per cent. interest, in the aggregate, is specifically authorized under the statute, and is binding on the borrowers.

The McBrides had a right to agree in procuring this loan that, if they desired to pay all the principal loan of $12,500 at any interest-paying date, or any part thereof, in order to be relieved of seven per cent. of the interest and all or any part of the principal of the loan, the exercise of such option on their part should in no way affect their liability on the second note of $3,865, representing three per cent. of the interest charged on the loan for the entire term, which is ordinarily termed the commission for procuring the loan. There is not the slightest evidence indicating any fraud or mistake in entering into the contracts, but the deed under which the plaintiffs obtained title to the land shows that the plaintiffs recognized the mortgages executed by

the McBrides as being valid, existing contracts.

We know of no law that will relieve parties of their solemn obligation assumed under a legal written contract, in the absence of fraud or mistake, where such contract is a valid, legal, existing obligation measured by the well-established rules of law; but it is the duty of the courts to enforce such contracts. It is not the duty of courts to make contracts for individuals nor to relieve them from burdensome obligations voluntarily assumed and entered into. Metz et al. v. Winne, 15 Okla. 1, 79 Pac. 223.

This court, in the case of Clement Mortgage Co. v. Johnston, 83 Okla. 153, 201 Pac. 247, held:

"If a contract, at its inception, is not shown to be usurious as tested by the above rule, it is not made usurious by any subsequent transaction liquidating said loan, even though there is paid by the borrower for such liquidation a sum in excess of a sum for interest which would accrue if calculated at the legal rate for the time the sum loaned was held by the borrower. The reason for this rule is that, a loan consummated being a fixed investment, and for and in consideration of consenting to a accelerated liquidation or payment before the expiration of the period of the loan a charge is made of the borrower by the lender, this charge is not for further forbearance and detention of the money, but is a charge for ending the loan or forbearance by the lender consenting to its accelerated liquidation or payment, and a statute as to usury does not apply to such a transaction, and is held to be an agreed consideration for such accelerated liquidation or payment."

This court, in the case of Deming Investment Co. v. Reed et ux., 72 Oklahoma, 179 Pac. 35, held, where the borrower exercised his option to pay off a farm loan and paid the principal note and all interest and commission notes prior to the maturity of the loan, although the amount paid exceeded the amount of interest allowed by law due on the loan on the date the option was exercised, that the transaction was not usurious, for the reason the amount paid did not exceed the legal rate of interest for the entire time the loan had to run according to the terms of the contract.

The rule is well settled that the payment of an indebtedness by the debtor before maturity is not a loan or forbearance, and although, by the payment before maturity, the lender realizes more than the legal rate of interest computed up until the time of the payment, the transaction, by the action of the borrower in making the payment be-

fore maturity, is not rendered illegal or usurious. 29 Am. and Eng. Enc. of Law, p. 465; Eldred et al. v. Hart et al. (Ark.) 113 S. W. 213.

The legal effect of such a transaction, as held by the Supreme Court of North Carolina in Smithwick v. Whitley, 67 S. E. 1914, in requiring full payment of the interest or part of the interest for the full term is the price of releasing a good investment.

From an examination of the record in the instant case, it is clear from the undisputed testimony and the admitted facts that F. C. Finerty, the lender of the money to the McBrides, under all the written instruments evidencing the transaction, specifically contracted with the borrowers that in consideration of securing the loan for them, or making the loan, as the case might be, the borrowers should have the option at any interest-paying period during the 10 years, for which the loan was to run, of satisfying and paying any part or all of the loan and be released from the same, except for the payment of three per cent. of the loan, which is evidenced by the second mortgage and note.

The McBrides, in selling the lands, required the **purchasers to assume** this obligation, and no complaint has ever been made by the McBrides, the original parties to this contract. Such a contract being authorized under the law, it is our conclusion that the judgment of the trial court was misapplication of the law to established facts, and the judgment must be reversed, and the cause is remanded to the district court of Grady County, with directions to enter judgment in favor of the defendants upon their cross-petition.

JOHNSON, C. J., and COCHRAN, HARRISON, and MASON, JJ., concur.