**LITTLEFIELD et al. v. AIKEN.**

No. 18062.    Opinion Filed April 3, 1928.

(Syllabus.)

**1. Fraud—Essentials of Actionable Fraud —Proof.**

To constitute actionable fraud it must be made to appear (1) that defendant made a material representation, (2) that it was false, (3) that when he made it he knew it was false, or made it recklessly without knowledge of its truth and as a positive assertion, (4) that he made it with the intention that it be acted upon by plaintiff, (5) that plaintiff acted in reliance upon it, (6) that he thereby suffered injury, and (7) all of these facts must be proved with a reasonable degree of certainty. The absence of any of them would be fatal to a recovery.

**2. Same—Deeds—Requisite Proof to Justify Cancellation.**

In this jurisdiction, where fraud is alleged in the procuring of a written instrument, the proof must sustain the allegations by a preponderance of the evidence so great as to overcome all opposing evidence and reped all opposing presumptions of good faith.

**3. Deeds—Inadequacy of Consideration Insufficient for Cancellation.**

Inadequacy of consideration alone is not sufficient to justify rescission and cancellation of a deed regularly executed.

Error from District Court, LeFlore County; D. C. McCurtain, Judge.

Action by Pauline Aiken, nee Welch, against Minnie I. Littlefield, and James M. Littlefield, for rescission and cancellation of a deed. Judgment for plaintiff, and defendants appeal. Reversed.

White & Reid, for plaintiffs in error.

Philos S. Jones and Daily & Woods, for defendant in error.

RILEY, J. The defendant in error began this action for rescission and cancellation of a deed executed by her whereby she conveyed to plaintiff in error, Minnie I. Littlefield, one-half of her undivided one-half interest in four hundred acres of land located in LeFlore county for a consideration of $5,250, of which amount $1,250 was paid at the date of delivery of the deed, September, 1924, and the balance by the execution and delivery of a promissory note, which was made payable four years from the date of delivery with interest from maturity. A tender to defendant of the consideration paid was alleged.

For rescission and cancellation the following grounds, in substance, were alleged: (1) Gross inadequacy of consideration, in that the amount paid was based upon the value of $50 per acre, whereas the land was worth $150 per acre. (2) Fraud by way of false representations in that it was represented to plaintiff by defendants that the amount of taxes due on the land was large and burdensome and in the sum of $2,000; (3) that there was a large lake of water and a number of sloughs upon the land that lessened the number of acres subject to cultivation.

The defendants admitted the execution and delivery of the deed and the payment of the consideration alleged. They otherwise denied generally and specifically, fraud and misrepresentation. They alleged that the consideration paid was adequate; that at the time of the transaction there existed upon the land an outstanding lease with rentals paid in advance for a period of four years.

The trial court found plaintiff was young and inexperienced, and had no knowledge of the value of the land; that she was in financial distress; that she had known defendants intimately and reposed complete confidence in them; that defendants knew these facts; knew the value of the land and that the consideration paid was grossly inadequate; that defendants falsely represented the value of the land on account of delinquent taxes, lakes. and sloughs thereon, and that an offer of restitution had been made by the plaintiff, and by reason of the finding of gross inadequacy of consideration, false representation made, confidential relation existing, that said deed should be canceled, and the judgment was so rendered.

It is contended on appeal that the judgment is in error because the same is not sustained by sufficient evidence, is contrary to and against the clear weight of the evidence, and so contrary to law.

The only evidence of fraud is that on the part of the plaintiff. By her testimony it is shown that at the time of the execution of the deed she was a young woman of 19 years of age, married and living with her husband at Shawnee. The record shows her to be a young woman of intelligence and fair education. She had attended the Oklahoma Baptist University in the preparatory department for two years prior to her marriage, and one month thereafter, of her own volition, without suggestion from defendants, she went to Fort Smith for the avowed purpose of disposing of a part of her land in order to buy an automobile to be used by her husband in his employment. She sought

the defendants and informed them that she desired to dispose of some of her land. Mr. Littlefield asked if she knew about the taxes due on the land and inquired the price she desired. She testified:

"I told him I had no idea what it was worth; that he had charge of it all of the time and ought to know what it was worth. He said that there was a five-year lease on the land and a lot of back taxes; that there was a lake that would have to be drained, and a lot of land that was uncultivated; said there was a slough through it, and no improvements on it at all. He said he would place the price at $50 an acre on it, and asked me how that suited me, and I told him all right. He said would I accept $1,-250 in cash, and the balance in a note due in five years, and I told him I would. We went back to the office and fixed it up."

Such is substantially the record as to the fraud alleged.

"To constitute actionable fraud it must be made to appear (1) that defendant made a material representation, (2) that it was false, (3) that when he made it he knew it was false, or made it recklessly without any knowledge of its truth and as a positive assertion, (4) that he made it with the intention that it should be acted upon by plaintiff, (5) that plaintiff acted in reliance upon it, (6) that he thereby suffered injury, and (7) all of these facts must be proved with a reasonable degree of certainty. * * * The absence of any of them would be fatal to a recovery." Porter v. Rott, 116 Okla. 3, 243 Pac. 160; Tyer v. Caldwell, 114 Okla. 13, 242 Pac. 760; Humphrey v. Baker, 71 Okla. 272, 176 Pac. 896; Cooper v. Gibson, 69 Okla. 105, 170 Pac. 220; Henry v. Collier, 69 Okla. 24, 169 Pac. 636; Wingate v. Render, 58 Okla. 656, 160 Pac. 614.

Assuming that the representations stated were made, that they were material, that they were false, that they were made knowingly, recklessly, and intentionally as an inducement to secure the result, that the consideration was inadequate and the property was sacrificed, yet those facts would not be sufficient, for the essential element, No. 5 above, fails to appear; that is, the plaintiff acted in reliance upon such representations. Here it affirmatively appears that plaintiff wanted to sell her property for the best offer she could secure. She acted in what she considered an emergency and to assist her husband. According to plaintiff's testimony she did not rely upon the representations as to the condition of the land, but irrespective of what the condition may have been. She does not say herself that was the thing that induced her to act. She says, on the other hand, that what did induce her to go to Fort Smith on this occasion was to get some

money; that she and her husband were broke and indebted in the approximate sum of $150; that her husband had a proposition to take a traveling position and he prevailed upon her to buy a car and she hunted up the defendants, and that Mr. Littlefield told her that he had been to see her father about leasing the land, but that the arrangements had not been satisfactory. She testified that at the time she left Shawnee she intended disposing of a part of the land and that such intention was without consultation or suggestion on the part of defendants; that the land was located near the Littlefield store and she had lived for a year within a short distance of the land, but that she had never examined it; that unless she sold the land to defendants she intended selling it to someone else.

From an examination of the record we cannot say that the alleged false representations were false. The plaintiff testified that she knew there was an agricultural lease upon the land for four years in the future, and that payment of rentals for that period had been made and that there was in fact a burden of unpaid taxes. She testified (p. 30, C.-M.):

"Q. Did Mr. Littlefield tell you the amount of taxes against the land? A. No, sir. * * * He asked me if I knew about the taxes being against the place. I told him that I did not, and he said he would have to look that up."

Later, on cross-examination, she testified:

"Q. There were taxes against it? A. Not as much as he said. Q. How much did he say. A. He said quite a sum. Q. Well, there is quite a sum and was quite a sum due on that land at that time, was there not? A. Something over $1,000; yes, sir."

The deed so executed shows this lease existing upon the land and the same instrument contemplates improvements existing thereon.

Plaintiff's exhibit "C" shows taxes due in the sum of $1,025.74, and that some of the land had not been listed for taxes for several years, so then the complaint about false representations as to taxes due was not false, but true.

Ike Davis testified that Minehart lake was "just above there"; that this 20 acres that had not been cleared out was where the lake had been; "water stands there"; that there used to be more than now; it is called lake land; it could be cultivated by ditching; in order to cultivate it, it would have to be cleared and drained.

Mr. R. A. Welch, father of plaintiff, testified, in substance, east and west across this

land there is a ditch about eight or ten feet across the top which runs across east and west of the entire tract. So then the representation as to the lake and ditches was in fact not false, but true.

Plaintiff, knowing of the agricultural lease, could not have believed that the land was wild and uncultivated; that the land did require more improvement to permit total cultivation was proved beyond doubt.

"A mere preponderance of evidence, which at the same time is vague and ambiguous, is not sufficient to warrant a finding of fraud and will not sustain a judgment based upon such finding." Adams v. Porter, 58 Okla. 225, 158 Pac. 899.

The fraud must be made clearly to appear. Falsity of representations must be certainly proved in order to warrant the exercise of the most extraordinary power of a court of equity in cancellation of an executed contract. Atl. Delain Co. v. James, 94 U. S. 207, 24 L. Ed. 112.

The testimony must be clear, unequivocal, and convincing, and cancellation cannot be had upon a bare preponderance of evidence which leaves the issue in doubt. U. S. v. Maxwell Land Grant Co., 121 U. S. 325, 30 L. Ed. 949; Moore v. Adams, 26 Okla. 48, 108 Pac. 392; Owen v. U. S. Surety Co., 38 Okla. 123, 131 Pac. 1091; Rogers v. Harris, 76 Okla. 215, 184 Pac. 459; Washington v. Morton, 90 Okla. 142, 216 Pac. 457; Brown v. Harmon, 115 Okla. 277, 242 Pac. 1047.

With due consideration of the evidence, we say the same is not convincing that false statements were made by the defendants, and further, that plaintiff did not act in reliance upon the representations that were made, except as to the value of the land. In view of the testimony of Mr. Littlefield, that when the transaction was made they were within three-quarters of a mile from the land, and that plaintiff had lived there within a quarter of a mile two years before, that .he made no representations as to the improvements on the place, we say it is not probable or reasonable to believe that false representations were made, nor that the true statements made actuated the young lady in disposing of her interest in the land.

It might be said that the record establishes the inadequacy of the consideration paid. Six witnesses testified that the land was worth from $100 to $150 per acre; such value was fixed upon the whole of the land unincumbered. All of these witnesses said that the paid-up agricultural lease existing upon the land and with four years future would depreciate the selling price.

But inadequacy of consideration alone is not sufficient for cancellation or rescission. Chandler v. Roe, 46 Okla. 349, 148 Pac. 1026; 4 R. C. L. 501; 9 C. J. 1176.

We have here inadequacy of consideration coupled alone with so-called pecuniary distress, but in fact the pecuniary distress amounts only to financial embarrassment; there was no suffering hunger, or dire need, that made the transaction unconscionable or shocking, nor was the inadequacy of the consideration so gross as to establish evidence of fraud, nor do the facts, together with the matter of the long acquaintance of plaintiff and defendants, establish an abuse of confidential relation such as to warrant rescission and cancellation.

The result is comparable to what might have happened to Shakespeare's King Richard when his horse was slain, and being put afoot, he cried: "A horse! a horse! my kingdom for a horse!" And Catesby said: "Withdrawn, my lord, I will help you to a horse." Surely if Richard had withdrawn, traded, and sacrificed his kingdom for a horse, after the emergency, notwithstanding the inadequacy of consideration, he would not, under the law, have been permitted to rescind.

The judgment is reversed, with directions to render judgment for defendants.

MASON, V. C. J., and HARRISON, PHELPS, HUNT, CLARK, and HEFNER, JJ., concur.